IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEGAN O.,[1] | : | |
| *Plaintiff,* | : | CIVIL ACTION |
| v. | : | No. 24-427 |
| | : | |
| LELAND DUDEK, | : | |
| **Acting Commissioner of** | : | |
| **Social Security,** | : | |
| *Defendant.* | : | |

<u>MEMORANDUM</u>

**JOSÉ RAÚL ARTEAGA**                                                    **March 26, 2025**
**United States Magistrate Judge**[2]

The Commissioner of Social Security, through an Administrative Law Judge ("ALJ"), determined that Plaintiff was not disabled and denied Plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383.[3] Plaintiff seeks review of the decision, challenging the ALJ's (1) consideration of the agency's examining expert; (2) residual functional capacity ("RFC") finding; and (3) consideration of Plaintiff's "need to lie down during the day."

---

[1] The caption follows this Court's standing order in referring to Megan O. solely by Plaintiff's first name and last initial. *See* Standing Order, *In re*: *Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Feb. 25, 2025).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (ECF 9.)

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

(ECF 16.) The Commissioner contends that Plaintiff's arguments "undermine the substantial evidence" that exists to support the ALJ's decision. (ECF 17.)

After careful consideration of the entire record, Plaintiff's request for review is denied and the Commissioner's decision is affirmed for the following reasons.

## I.    BACKGROUND

Plaintiff protectively filed a claim for SSI on April 5, 2021, at age 19, two years after graduating from high school. (Tr. 645-46.) Plaintiff alleged disability beginning on that date because of autism, anxiety, and depression. (Tr. 136.) At the time of filing, Plaintiff had neither found employment nor returned to school. (Tr. 645-46.) Plaintiff's claim was denied initially and on reconsideration. (Tr. 52-75.) Plaintiff and a vocational expert ("VE") testified at a December 22, 2022 hearing. (Tr. 37-51.) After the hearing, the ALJ determined Plaintiff was not entitled to SSI. (Tr. 17-28.)

At step one, the ALJ found that Plaintiff had not performed work after the benefits application date. (Tr. 19.) At steps two and three, the ALJ found that Plaintiff had severe autism spectrum disorder level 1; depression; gender dysphoria; schizoid personality disorder; bilateral patellofemoral arthritis; hypermobility of joints; and obesity, but Plaintiff's impairments did not meet or equal one of the Commissioner's listed impairments. (Tr. 19-21.) Before turning to steps four and five, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform: "light work as defined in 20 C.F.R. § 416.967(b) except frequent climbing of ramps, stairs, balance, stoop, kneel, crouch, and crawl, occasional climbing of ladders, ropes, scaffolds, and" that Plaintiff was "limited to work in a low stress environment, defined as only occasional

2

changes in the work setting and no interaction with the public." (Tr. 21.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the Plaintiff's alleged symptoms, but that "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 22.) More specifically, the ALJ considered Plaintiff's history of bilateral knee pain, but found that imaging studies were "overall unremarkable and overall stable" and that the record supported "normal physical examination findings." (Tr. 27.)  In addition, despite Plaintiff's history of obesity, Plaintiff's weight was "overall stable" and there was "evidence of at least some success with weight loss." (*Id*.) The ALJ also noted Plaintiff's "history of mental health impairments," but found the record supported "overall stable mental status examination findings, as well as improvement in terms of [Plaintiff's] self esteem following . . . surgery and overall improvement in mood." (*Id*.) Although Plaintiff "reported a general feeling" of not fitting in when in social situations, Plaintiff had friends, was able to use public transportation, attend group sessions, attend yoga, and go to the library." (*Id*.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id*.) At step five, the ALJ relied on the VE's testimony to conclude that Plaintiff was capable of performing jobs including small products assembler, mail sorter, and cleaner: all light, unskilled occupations. (Tr. 28, 49-49.) As a result, the ALJ determined that Plaintiff was not disabled because Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 28.)

Plaintiff filed a request for review of the ALJ's determination, which the Appeals Council declined. (Tr. 1-3.) Plaintiff commenced this action on January 30, 2024. (ECF 1.)

## II.    LEGAL STANDARDS

The limited question before the Court is not whether Plaintiff was disabled. Rather, the Court must determine whether substantial evidence supports the Commissioner's finding that Plaintiff was not and whether the Commissioner, through the ALJ, correctly applied the relevant law. 42 U.S.C. § 405(g). An ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled, considering in sequence whether: (1) the claimant is engaged in substantial gainful activity; (2) he or she has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment[4]; (4) the claimant is able to do his or her past relevant work; and (5) he or she is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v). A claimant "bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). At step five, "the Commissioner bears the burden of establishing the existence of jobs in the national economy that an individual with the claimant's impairments is capable of performing." *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014).

Relevant to Plaintiff's claims here, the RFC is what a claimant "'is still able to do despite the limitations caused by . . . [the claimant's] impairment(s).'" *Burnett v. Comm'r*

---

[4] The listings of impairments are found at 20 C.F.R. pt. 404, subpt. P, app. 1.

*of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). To make an RFC assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment. 20 C.F.R. § 404.1545(a)(2). The ALJ also considers "any statements about what [a claimant] can still do that have been provided by medical sources" and "descriptions and observations of [the claimant's] limitations from [their] impairments" provided by the claimant or "family, neighbors, friends, or other persons." *Id.* at § 404.1545(a)(2).

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based." 42 U.S.C. § 405(b)(1). An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).[5] "The statute requires administrative judges to explain only the dispositive reasons for their decisions, not everything else that they considered." *Id.* Said otherwise, ALJ's "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.* An ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120); *see also Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) (explaining that an ALJ is not required to discuss "every tidbit of evidence"). The ALJ's reasoning need only be "reasonably discernable." *Garland*

---

[5] Neither party cites this binding Third Circuit precedent in their briefing.

*v. Ming Dai*, 593 U.S. 357, 369 (2021). The Court may read the ALJ's decision "as a whole" to determine whether the record was sufficiently developed. *Jones*, 364 F.3d at 505.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A plaintiff bears the burden to explain how any alleged "error . . . could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

Any legal issues decided by the ALJ are subject to the Court's "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Courts review the Commissioner's factual findings for "substantial evidence" by looking at the existing administrative record. *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). "[T]he threshold for such evidentiary sufficiency is not high . . . ." *Id.* at 103. Substantial evidence "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It "does not mean a large or considerable amount of evidence . . . ." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Where substantial evidence supports the ALJ's findings of fact, the Court is bound by them, even if it "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision

so long as the record provides substantial support for that decision." *Malloy v. Comm'r Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). The Court may "not substitute [its] own judgment for that of the fact finder." *Zirnsak*, 777 F.3d at 611.

### III.    DISCUSSION

#### A.    <u>The ALJ Properly Evaluated the Agency's Examining Expert's Opinion.</u>

Plaintiff faults the ALJ for determining that the February 23, 2022 opinion of Leah Bielski, Psy. D., a state agency consultative examiner, was only "partially persuasive." (ECF 16 at 8-9; *see* Tr. 965.) In the ALJ's view, Dr. Bielski "provided little support for her opinion regarding [Plaintiff's] marked limitation in responding to changes" and her opinion "noted only [Plaintiff's diagnoses] and made "no mental status examination findings apparent to support such a limitation." (Tr. 25.) Dr. Bielski opined that Plaintiff had no limitations in understanding, remembering, and carrying out simple instructions and making judgments on simple work-related decisions. (Tr. 964-65.) In addition, Dr. Bielski assessed Plaintiff to have a mild limitation in the ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. (*Id.*) Dr. Bielski also noted Plaintiff's moderate limitations in interacting with the public, supervisors, and co-workers and marked limitations in responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 965.)

Plaintiff argues that the ALJ "failed to realize" that, because Dr. Bielski was hired to evaluate Plaintiff for the purposes of an SSI application, "Dr. Bielski had no personal relationship with Plaintiff and had no motivation to author a favorable opinion out of a sympathy for a stranger [s]he evaluated once." (ECF 16 at 9; *see also* ECF 22 at 5 (citing

two non-binding Seventh Circuit decisions).) However, an ALJ is not required to consider whether a medical provider either had or did not have "motivation to author a favorable opinion out of sympathy" based on the provider's relationship with a claimant. (*Id.*) Since 2017, the regulatory framework applied to an ALJ's evaluation of medical evidence does not require an ALJ to "defer or give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(b). An ALJ is "not bound to accept physicians' conclusions," and the final determination of a plaintiff's eligibility for benefits always resides with the ALJ. *Balthaser v. Kijakazi*, No. 20-6181, 2022 WL 2828848, at *6 (E.D. Pa. July 20, 2022); *see also Brewington v. Comm'r of Soc. Sec.*, No. 21-5482, 2024 WL 329529, at *8 (E.D. Pa. Jan. 29, 2024) (holding that the final decision of an applicant's eligibility is "reserved to the Commissioner"). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of" them. 20 C.F.R. §§ 404.1520c(a) and (b)(1). Supportability and consistency are the "most important" persuasiveness factors. 20 C.F.R. § 404.1520c(b)(2). "[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 WL 8437872, at *1 (W.D. Pa. Dec. 4, 2023) (citation and internal quotation omitted). An ALJ "need not reiterate the magic words 'support' and 'consistent' for each" medical opinion considered in reaching a determination. *Zaborowski*, 115 F.4th at 639.

Here, the ALJ's determination was rendered "[a]fter careful consideration of *all* the evidence" (Tr. 17 (emphasis added)) and "the *entire* record." (Tr. 19 (emphasis added).) The ALJ recognized that Dr. Bielski was a "consultative examiner"—rather than a treating physician with an ongoing relationship with Plaintiff—and found that her opinion that Plaintiff had a marked limitation in responding to workplace changes was not persuasive because Dr. Bielski offered little support for her conclusion and other record evidence supported finding a lesser limitation. (Tr. 25.) Substantial evidence— such relevant evidence as a reasonable mind might accept as adequate—supports the ALJ's conclusion that Dr. Bielski's findings did not support the degree of limitation proffered in Plaintiff's ability to manage changes at work and that Dr. Bielski's opinion was inconsistent with other record evidence.

When considering supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Plaintiff argues that the ALJ improperly "failed to consider that Dr. Bielski reviewed all of Plaintiff's symptoms," and made mental status findings of "restless motor behavior, poor eye contact, impaired memory skills, limited general fund of information, and fair insight" (*Id.* at 10.) Plaintiff maintains that if the ALJ had instead found that Plaintiff had marked limitations in the ability to respond appropriately to usual work situations and to changes in a routine work setting, a finding of disability would have been warranted under Social Security Ruling 85-15. (*Id.*) Nevertheless, that

is not what the ALJ found. What matters here is whether there is substantial record evidence to support what the ALJ did find: that Dr. Bielski's opinion was insufficiently supported to be fully—not partially—persuasive.

When Dr. Bielski evaluated Plaintiff in February 2022, Plaintiff "was restless," "appeared to exhibit motor tics," and had "poor" eye contact, but Plaintiff also exhibited "coherent and goal directed" thought processes, "with no evidence of hallucinations, delusions or paranoia." (Tr. 961.) In addition, Plaintiff felt "euthymic," was oriented "[t]o person place and time," and had "[i]ntact" attention and concentration, "average" cognitive functioning, and "fair" insight and judgment. (Tr. 961-62.) Plaintiff displayed only "[m]ildly impaired" recent and remote memory skills, and was able to dress, bathe, groom, prepare frozen meals, manage money, play video games, and read. (Tr. 962.) Dr. Bielski's examination report acknowledged Plaintiff's diagnoses of "[a]utism spectrum disorder, level 1, requiring supports, without accompanying intellectual impairment, without accompanying language impairment" in addition to "[g]eneralized anxiety disorder," and "[m]ajor depressive disorder, recurrent episodes, moderate." Dr. Bielski assessed Plaintiff's prognosis as "[f]air, given ongoing psychological concerns and involvement in treatment." (Tr. 962-63.) Dr. Bielski then checked a box to indicate that Plaintiff had a "marked" limitation in responding to change in a routine work setting and responding appropriately to usual work situations on a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" form. (Tr. 965.) Where the form asked Dr. Bielski to "identify the factors (*e.g.*, the particular medical signs, laboratory findings or other factors described above) that support[ed]" her assessment that Plaintiff had a

"marked" restriction in responding appropriately to usual work situations and to changes in a routine work setting, Dr. Bielski wrote only "ASD, Anxiety, Depression." (*Id.*) Given the entirety of Dr. Bielski's examination findings, and not just the findings highlighted in Plaintiff's brief (ECF 16 at 10), substantial evidence exists to support the ALJ's conclusion that Plaintiff's presentation to Dr. Bielski, on balance, did not align with the assigned "marked" restriction for this work-related mental activity, *i.e.,* there is substantial evidence that Dr. Bielski's conclusion was not fully supportable.

When considering consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Plaintiff contends "the ALJ failed to consider that Dr. Bielski's opinion was consistent with the other evidence," citing, among other things, a 14-day inpatient hospitalization in December 2020 "due to self-harm,"[6] a March 2020 report of "worsening depression and passive suicidal ideations," diagnoses from J. Fleetman, M.D., and M. Salim, M.D., and numerous adjustments to Plaintiff's prescriptions. (ECF 16 at 11-12.) Plaintiff asserts "that Plaintiff is not asking the Court to reweigh the evidence," but is instead attempting to show that

---

[6] Plaintiff's application for SSI alleges disability beginning April 5, 2021. While the ALJ may consider episodes of symptoms before that date, they are not conclusive with respect to whether Plaintiff was disabled during the relative period. *See* 20 C.F.R. § 416.912(b)(ii) (explaining that a claimant's "[c]omplete medical history means the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application").

the ALJ never weighed the evidence at all. (*Id.* at 12.) However, re-weighing the evidence is effectively what Plaintiff's briefs suggest the Court should do. Plaintiff's Reply cites a laundry list of evidence that, in Plaintiff's view, was consistent with Dr. Bielski's opinion. (ECF 22 at 2-4.) The question here, however, is not whether there is evidence in the record that supports a different conclusion from the ALJ's. *See Malloy*, 306 F. App'x at 764. Rather, what the Court must decide is whether there is "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's conclusion. *Biestek*, 587 U.S. at 103. Again, that "does not mean a large or considerable amount of evidence . . . ." *Pierce*, 487 U.S. at 565.

Substantial evidence also supports the ALJ's conclusion that Dr. Bielski's finding that Plaintiff had a marked limitation with respect to the ability to adapt in a work setting was not consistent with other information in the record. Dr. Bielski's determination was inconsistent with the June 15, 2021 assessment by state agency psychological consultant Richard Williams, Ph.D., (Tr. 55-62) and the March 8, 2022 assessment by state agency psychological consultant Thomas Fink, Ph.D. (Tr. 66-74.) As the ALJ explained, both had assessed Plaintiff has having a "moderate limitation" in the ability to interact appropriately with the general public and respond appropriately to changes in the work setting." (Tr. 26; *see also* Tr. 57, 60-61, 69, 72.) The ALJ also considered Plaintiff's treatment records which showed that Plaintiff's mood improved when taking Effexor. (Tr. 22-23; *see also* Tr. 1146 ("They continue to note improvement of mood with the use of Effexor . . . internally they seem to be more optimistic."); Tr. 1345 ("well controlled mood"); Tr. 1361 ("well controlled mood"); Tr. 1511 (reporting improvement with

symptoms of depression while taking Effexor and Plaintiff's agreement to increase dose to address residual symptoms); Tr. 1590 (noting "stable overall" depression "with current medications").) Plaintiff still reported some symptoms of depression while medicated, like inattentiveness, anhedonia, and dysregulated sleep (*see, e.g.*, Tr. 1144, 1345, 1361, 1363, 1511) but, as the ALJ noted (Tr. 22-27), the record reflects that Plaintiff's mental status examinations were largely unremarkable, generally displaying intact attention and concentration, thought processes, behavior, judgment, and insight. (*See* Tr. 1147, 1348-49, 1364-65, 1514, 1547.) In considering whether Dr. Bielski's "marked" limitation finding was consistent with other evidence, the ALJ also weighed Plaintiff's activities. (Tr. 20 ("the claimant is able to perform daily tasks, play video games, use social media, research interests, and provide child-care of their young brother," and "is able to use public transportation . . . and also reportedly attends yoga on Mondays and goes to the library").) The record documents Plaintiff's daily activities as including babysitting a three-year old half-sibling ("constant vigilance"), playing video games, pursuing an interest in insects (including maintaining a social media page devoted to them), frequently talking to a friend in another state, looking forward to a brother's visit, attending yoga, attending physical therapy, going to the library, and participating in social group functions (involving "camaraderie" and activities like "arts and crafts"). (*See* Tr. 42-43, 159, 653, 724, 1146, 1347, 1546, 1648.) "[M]ore than a mere scintilla" of record evidence supports the ALJ's conclusion that Dr. Bielski's finding that Plaintiff had a marked limitation in responding appropriately to workplace situations was not consistent enough with other record evidence to be more than only partially persuasive.

*Biestek*, 587 U.S. at 97 (citation and internal quotation omitted). Remand for further consideration is not required based on this argument.

### B.        Substantial Evidence Supports the Mental RFC Determination.

Plaintiff faults the ALJ's RFC determination as not having "place[d] any limits on Plaintiff's ability to interact with co-workers and supervisors" when the ALJ also determined that Plaintiff was "limited to no interaction with the public." (ECF 22 at 6; *see also* ECF 16 at 13.) Plaintiff contends the ALJ should have, and did not, include moderate limitations in the ability to interact with co-workers and supervisors in the hypothetical questions to the VE or in the RFC. (ECF 16 at 14.) More specifically, Plaintiff faults the ALJ for finding that Plaintiff could perform the job of "cleaner" because the Dictionary of Occupational Titles ("DOT") states that someone in the job "renders personal assistance to patrons." (ECF 16 at 13.) Plaintiff's argument is supported with evidence that, in Plaintiff's view, would demonstrate "that Plaintiff would not only have limitations in interacting with the public but also in the ability to interact appropriately with co-workers and supervisors." (ECF 22 at 7; *see also* ECF 16 at 14.)  The Commissioner counters that the record "amply support[s] the ALJ's conclusion that Plaintiff required limitations on interacting with the public but not coworkers or supervisors." (ECF 17 at 11.) The Commissioner also contends that Plaintiff's argument that Plaintiff could not perform the work of a cleaner fails to support remand because "the ALJ, relying on the vocational expert's testimony, found that Plaintiff can perform two other substantially available occupations, *i.e.*, a mail sorter and small products assembler," meaning there is substantial evidence for the ALJ's step five finding. (*Id.* at 13 (citing Tr. 28, 48-49).)

A review of the record shows that the ALJ's RFC determination does not require remand because it is supported by substantial evidence, *i.e.*, "more than a mere scintilla," which is all that is required to affirm the Commissioner's determination on appeal. *Biestek*, 587 U.S. at 97 (citation and internal quotation omitted). "To determine what type of work (if any) a particular claimant is capable of performing, the Commissioner uses a variety of sources of information, including the DOT, the [Social Security Administration's] own regulatory policies and definitions (found in the Code of Federal Regulations ("CFR")), and testimony from VEs." *Zirnsak*, 777 F.3d at 616. "As a general rule," the occupational evidence a VE provides "should be consistent with the occupational evidence presented in the DOT." *Id.* at 617. Yet, "the presence of inconsistencies does not *mandate* remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id.* (emphasis in original) (quoting *Rutherford*, 399 F.3d at 557).

Plaintiff points to Plaintiff's own function report noting a claimed inability to work due to difficulty interacting with people and problems getting along with family, friends, neighbors, and others. (ECF 16 at 14, citing Tr. 155 and 159.) Plaintiff also cites hearing testimony about getting "snippy" with people. (ECF 16 at 14, citing Tr. 45.) However, the ALJ found that the record did not support Plaintiff's own allegations regarding the limiting effects of Plaintiff's alleged conditions. (Tr. 27.) At steps two and three, the ALJ found Plaintiff had a moderate limitation in the broad category of "interacting with others," but then explained that the mental RFC assessment "requires a more detailed assessment of the areas of mental functioning." (Tr. 21.) So, the ALJ's RFC determination

more closely examined Plaintiff's limitations in interacting with others including considering Plaintiff's ability to deal with both "unfamiliar" public and with coworkers or supervisors. The ALJ acknowledged Plaintiff's report of a general "feeling" of not "fit[ing] in in social situations," but also found there was record evidence that Plaintiff participated in situations with others, including "us[ing] public transportation, attend[ing] group sessions, attend[ing] yoga, and go[ing] to the library." (*Id.*) The ALJ explained that Dr. Bielski had found Plaintiff had only a "moderate limitation" in interacting appropriately with the public, supervisors, and co-workers. (Tr. 26.) This finding was consistent with Dr. Williams' assessment—which the ALJ considered (Tr. 26)—that Plaintiff had a moderate limitation with respect to interacting with others and with the general public and with respect to working "in coordination with or in proximity with others without being distracted by them" and "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors." (Tr. 56, 60-61.) Dr. Williams also found that Plaintiff was "[n]ot significantly limited in the "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (Tr. 61.) Likewise, the ALJ considered Dr. Fink's assessment, which was overall "more consistent with the record as a whole," that Plaintiff had only a "moderate limitation" in the ability to interact appropriately with the general public. (Tr. 26; *see* Tr. 72.) Dr. Fink acknowledged that Plaintiff "struggles with social skills," but found that Plaintiff "communicates clearly, relates appropriately to familiar others, and behaves predictably in most social situations." (Tr. 72.) So, Dr. Fink assessed Plaintiff as being not significantly limited in the abilities "to accept instructions and respond appropriately to criticism for

supervisors" and "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (*Id.*) Considering the record, substantial evidence exists to support the ALJ's mental RFC determination.

Moreover, remand is not required based on Plaintiff's argument that the RFC determination is flawed because Plaintiff cannot "render personal assistance to patrons," one of the responsibilities for a "cleaner" per the DOT. *See* 323.687-014 Cleaner, Housekeeping (any industry) alternate titles: maid, DICOT 323.687-014, 1991 WL 672783. Even if the record supported a finding that Plaintiff had limits in interacting with co-workers and supervisors (and it does not), "nearly the entire job description for a cleaner is unrelated to people." *Paquette v. Kijakazi*, No. 23-122, 2023 WL 11955310, at *5 (W.D. Okla. Oct. 23, 2023), report and recommendation adopted sub nom. *Paquette v. O'Malley*, No. 23-00122, 2024 WL 4213606 (W.D. Okla. Sept. 17, 2024). "The job of housekeeping cleaner involves a 'people' rating of 8, . . . which is the 'lowest possible level of human interaction that exists in the labor force.'"[7] *Beverly A. T. v. O'Malley*, No. 23-0050, 2024 WL 1308039, at *6 (N.D. Okla. Mar. 27, 2024) (quoting *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016; also citing DICOT 323.687-014). "Many Courts have held that a position

_____

[7] "The fifth digit of a DOT occupational code expresses a job's relationship to 'people' by identifying the highest appropriate function in this area." *Keens v. Kijakazi*, No. 20-2135, 2022 WL 635540, at *10 (M.D. Pa. Feb. 8, 2022), report and recommendation adopted, No. 20-02135, 2022 WL 626771 (M.D. Pa. Mar. 3, 2022) (citing DICOT App'x B, 1991 WL 688701). "People" means humans "dealt with on an individual basis during the workday." *Id.* An "8" rating requires "taking instructions–helping." *Id.* According to the DOT, "taking instructions" requires "[a]ttending to the work assignment instructions or orders of a supervisor. (No immediate response required unless clarification of instructions or orders is needed.)." *Id.*

with this 'people' code is one that can be performed despite limitations in interacting with supervisors." *Sanchez v. Colvin*, No. 13-2479, 2014 WL 5147793, at *16 (M.D. Pa. Oct. 14, 2014) (citing cases); *see also Ashley I. S. C. v. Kijakazi*, No. 22-0201, 2023 WL 5628598, at *5 (N.D. Okla. Aug. 31, 2023) (finding no conflict between housekeeping cleaner job and RFC limitation of incidental contact with public). If there was any error in failing to assess Plaintiff's limitations in interacting with co-workers and supervisors, it was harmless.

The ALJ considered all limitations credibly established by the record and the ALJ's analysis is supported by "such relevant evidence as a reasonable mind might accept as adequate to support" the RFC determination. *Biestek*, 587 U.S. at 103. Remand is not required based on this argument.

### C.    Plaintiff Has Not Shown the ALJ Erred by Failing to Evaluate Plaintiff's Need to Lie Down During the Day.

Finally, Plaintiff argues the ALJ's RFC determination improperly "failed to address Plaintiff's need to lie down during the day," citing "reported sleep issues and fatigue." (ECF 16 at 15.) Plaintiff contends that "had the ALJ found that evidence supported this allegation and subsequently included it in the RFC assessment, the VE *may* have testified that no jobs existed for an individual who required the need to lie down during an eight-hour workday." (ECF 22 at 9 (emphasis added).) The Commissioner argues no relief is due for this argument either because the ALJ explicitly considered Plaintiff's complaints of sleep difficulties and fatigue, and the factual record "provides substantial support for the ALJ's finding." (ECF 16 at 14.)

A review of the record demonstrates that the ALJ appropriately weighed Plaintiff's sleep-related complaints in determining Plaintiff's RFC. Plaintiff testified about sleeping a lot during the day and having poor energy levels. (Tr. 45.) Plaintiff reported having issues with fatigue, and trouble with sleeping. (Tr. 155-56, 303, 751, 761, 960, 1547.) But Plaintiff also reported that any fatigue was "likely because" of the lack of a "regular schedule" and staying up "late into the night." (Tr. 836.) Plaintiff described staying up late to play video games, generally "retir[ing] to bed at 3:30 am." (Tr. 1546.) At the hearing, Plaintiff explained:

> I tend to wake up late, as late as I can, because I have difficulties falling asleep. It depends on what appointments or obligations I have, you know, in the day. I wake up and I make a microwave meal and if I don't have any obligations I usually don't wake up until late—late afternoon, oh, 3:00 p.m. and then I'll play video games for—if it's warmer—in the warmer months sometimes I take a lap—a walk around the neighborhood.

(Tr. 42-43.)

Plaintiff maintains the ALJ erred by not engaging with sleep-related evidence. (ECF 16 at 15.) However, the ALJ's decision explicitly acknowledges Plaintiff's testimony about "difficulty sleeping" and having to "sleep during the day." (Tr. 22.) The ALJ also addressed Dr. Salim's reports that Plaintiff complained about "low energy" and "recent issues falling asleep" and his repeated advice to "maintain[ ] good sleep hygiene." (Tr. 22-23.) The ALJ recognized that in September 2021, Dr. Salim noted Plaintiff's report of "well regulated sleep but with sleeping from 2:00am to 2:00pm." (Tr. 23.) The ALJ also recognized Dr. Bielski's February 2022 evaluation which noted Plaintiff's own report of "difficulty falling asleep," although Plaintiff presented as "fully alert and oriented . . . ."

(*Id.*) In addition, the ALJ considered an August 2022 report from Hershey Behavioral Health which noted Plaintiff's report of "persistent early night insomnia despite refining sleep hygiene practices and medication trials." (Tr. 24.) Weighing all of the record evidence, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of" Plaintiff's symptoms—including sleep issues—were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22.)

While a claimant's testimony about subjective complaints is relevant, an ALJ is not required to simply accept what the claimant said without question. *See* 20 C.F.R. § 404.1529(c)(4) ("Your symptoms . . . will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence."); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) ("Although any statements of the individual concerning his or her symptoms must be carefully considered . . . the ALJ is not required to credit them.") (internal quotations and citations omitted). "That [Plaintiff] would have the ALJ weigh the evidence differently and find [Plaintiff] needs to lie down . . . during the workday is not persuasive, nor does it compel remand." *Conor B. v. Kijakazi*, No. 20-3342, 2022 WL 4079461, at *4 (N.D. Ill. Sept. 6, 2022) (explaining that the plaintiff's own testimony and function report "that he needs to rest for two hours every day because his medication causes sluggishness and fatigue" did not support remand where the "limitation was not corroborated by the medical evidence, nor did any doctor's opinion contained in the

record . . . indicate a limitation in this area was warranted"); *see also Timothy M. v. Comm'r of Soc. Sec.*, No. 18-5229, 2019 WL 934896, at *5 (W.D. Wash. Feb. 26, 2019) (finding the ALJ did not erroneously fail to account for sleep-related symptoms where, among other things, the "[p]laintiff did not report a need for daytime naps or rest breaks to his providers").

Remand is not required for further consideration of Plaintiff's alleged need to lie down during the day because the record contains "more than a mere scintilla" of evidence to support the ALJ's decision to not afford this alleged limitation further consideration. *Biestek*, 587 U.S. at 97 (citation and internal quotation omitted).

## IV.    CONCLUSION

However unsatisfied Plaintiff may be with the ALJ's findings, it is not the Court's responsibility to reweigh the evidence or to impose its own factual determinations. Upon review, the ALJ's decision and the underlying record show that the evaluation of Plaintiff's claim for SSI is supported by "such relevant evidence as a reasonable mind might accept as adequate to support" her determination. *Biestek*, 587 U.S. at 103. The threshold for "evidentiary sufficiency is not high" and remand for further consideration is not required. *Id.* The Commissioner's final decision is AFFIRMED, and this matter is DISMISSED.

An appropriate Order follows.